UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANGELO CORTIJO,<br><br>          Plaintiff,<br><br>     v.<br><br>ST. ANDRE, et al.,<br><br>          Defendants. | No.  2:23-cv-0454 DB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that defendants denied him the ability to make phone calls, retaliated against him, and discriminated against him in violation of his constitutional rights.  Presently before the court is plaintiff's motion to proceed in forma pauperis (ECF No. 2), motion to appoint counsel (ECF No. 5), motion for preliminary injunction (ECF No. 8), and his complaint (ECF No. 1) for screening.  For the reasons set forth below, the undersigned will grant the motion to proceed in forma pauperis, deny the motion to appoint counsel, deny the motion for preliminary injunction without prejudice, and dismiss the complaint with leave to amend.

**IN FORMA PAUPERS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).  (ECF No. 2.)  Accordingly, the request to proceed in forma pauperis will be granted.

1

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**SCREENING**

**I.    Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell AtlanticCorp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II.     Allegations in the Complaint**

Plaintiff states the events giving rise to his claims occurred while he was a California Department of Corrections and Rehabilitation ("CDCR") inmate housed at High Desert State

Prison ("HDSP").  (ECF No. 7 at 1.)  He has named the following defendants: (1) St. Andre, HDSP warden; (2) Aineswroth, HDSP correctional officer; (3) Alverez, HDSP correctional officer; (4) Villareal, HDSP correctional officer; (5) Samantha Kissane, chief centralized screening team office of internal affairs; (6) C. Reynolds, HDSP correctional sergeant; (7) officer Rodriguez; (8) officer Romo, HDSP; (9) Dr. Fanettie, Phd; (10) Jane Doe, "(Hispanic female nurse)"; (11) Parra, HDSP correctional officer; and (12) John Doe, HDSP officer.  (Id. at 2-3.)

Plaintiff alleges warden St. Andre "created local operating procedure 617 which mandated a blanket restriction without regard to individual case factors, restricting tablet content for incarcerated persons in segregated housing."  (Id. at 4.)  He states that operating procedure 617, "denies inmates their right to call their children, parents[,] and friends."  He claims that the blanket restriction violates his First Amendment rights.  (Id. at 5.)

In support of his claim, plaintiff cites a resolution from the United Nations regarding rules for the treatment of prisoners which requires that incarcerated individuals be permitted to maintain regular communication with family and friends and that disciplinary sanctions not include prohibition of family contact.  (Id. at 6.)

Plaintiff states that St. Andre failed to protect him from retaliation and did not take appropriate action in response to staff misconduct complaints.  (Id. at 7.)  He further alleges HDSP has a "well known history of officer misconduct due to retaliation for complaints filed against employees and administrators!"  (Id.)  He claims he was retaliated against "by means of deprivation from family and friend contact, contaminated food trays, resulting in physical injury, and harassment."  He further alleges that St. Andre is "chiefly responsible because he has a duty to ensure staff misconduct complaints are handled in a safe manner" and he "was negligent when he failed to temporarily remove staff who were retaliating on plaintiff as well for other oversights."  (Id.)

He states that on September 26, 2022, officer Romo opened a secured door leading to a violent interaction.  (Id. at 13.)  He further alleges that it was done to set plaintiff up so that he would be injured or receive a long SHU term in retaliation for filing grievances.  (Id. at 8.)  He claims he was later given an "excessive" term of imprisonment in a segregated housing unit for

conduct that is common in prison. Plaintiff claims "[t]he Investigation report package" showed that prison officials falsified allegations to "aggragate [sic] the circumstances of the alleged incident."

Plaintiff states he filed grievances complaining about unspecified actions of correctional officers Ainesworth and Alverez. (Id. at 9.) Plaintiff states his complaint was informally resolved by the former warden "when he personally ordered" Ainesworth and Alverez "to provide equal phone access according to the governors budget." (Id.) He alleges that "for a period of time" Ainesworth and Alverez "informally retaliated" against him until he was transferred out of HDSP. When plaintiff returned to HDSP a few months later, tablets were issued to inmates in the general population. He claims he was denied a tablet for about one month. He filed an appeal that was granted by Howard Moseley, Associate Director of CDCR.

Plaintiff alleges that Reynolds, facility D sergeant, was "responsible" for defendants Ainesworth and Alverez and also "'cover[ed] up' and allowed retaliation to occur in the first incident." (Id. at 10.) He further alleges Reynolds and Romo conspired to set him up. He states Reynolds allowed Romo to open a secured door "which resulted in an incident which is currently awaiting possible criminal charges." (Id.) He further claims Reynolds "falsified state documents which made it seem as if the inmates were sole[l]y responsible for what occur[r]ed." (Id.)

Plaintiff states he received a 2-year SHU (Security Housing Unit) term. He acknowledges that an ICC (Institutional Classification Hearing) hearing was held, but states that he was not given a "meaningful opportunity to mitigate or defend against" the term. He states the term is "unusual in relation to how others similarly situated are treated." (Id.)

He further alleges non-party D. Davis and officer Rodriguez prevented him from filing a complaint regarding the ICC hearing results. (Id. at 11.) He states that while in "Z unit or STRH" he has filed at least 35 complaints related to discrimination, retaliation, and living conditions. (Id.) He states that complaints were denied when reviewing staff failed to properly investigate the claims.

Plaintiff alleges officers retaliated by recruiting Dr. Fanetti "to control his professional and medical opinion." (Id.) He further alleges Fanetti issued a report minimizing plaintiff's

5

mental health issues and rendered a report that contradicts "medical professionals norms" and plaintiff's "long standing and publicly well know [sic] mental history." (Id. at 11-12.)

He claims that Kissane, wrongfully amended a grievance plaintiff filed from a staff misconduct complaint to a regular grievance. (Id. at 13.) He claims the grievance concerned retaliation by Alverez and Ainesworth by means of tampering with phone calls to prevent the call from going through. (Id.)

Plaintiff alleges "HDSP is racist towards black inmates." (Id. at 16.) He identifies himself as biracial, stating he is black and Hispanic and states that he is being treated more harshly "in part due to [his] race." He alleges warden St. Andre "has failed to ensure that black inmates such as [him]self is treated fairly and equally when he: allowed complaints to be mishandled when it concerned a race issue, imposed longer SHU terms on black inmates than on inmates of other races, failed to ensure racial balanced shift(s) of officers in the short term restricted housing unit or ASU, resulting in unfair and bias treatment."

Plaintiff indicates that this claim was not exhausted. He states that he did not submit an administrative appeal regarding the allegations in this claim because he fears additional retaliation for filing such claims and "several complaints were mishandled." (Id.)

### III. Does Plaintiff State a Claim under § 1983?

#### A. Denial of Telephone Privileges

Plaintiff claims that St. Andre has violated his First Amendment rights based on a local operating procedure that denies telephone privileges to inmates in the SHU. (ECF No. 7 at 4-6.)

##### 1. First Amendment Rights of Inmates

A prison inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." Pell v. Procunier, 417 U.S. 817, 822 (1974). To state a claim an inmate must allege facts showing that "the type of activity he engaged in was protected under the [F]irst [A]mendment and that the state

6

impermissibly infringed on his right to engage in the protected activity." Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).

"[L]oss of telephone privileges does not constitute a constitutional violation given the availability of alternative means of communication by mail or in person." Bryant v. Cortez, 536 F. Supp. 2d 1160, 1167 (C.D. Cal. Jan. 23, 2008) (citing Overton v. Bazzetta, 539 U.S. 126, 135 (2003)); see also Williams v. ICC Committee, 812 F. Supp. 1029, 1034 (N.D. Cal. 1992) ("This court is aware of no authority to support a claim of constitutional violation due to the deprivation of telephone access for convicted prisoners." (citing Toussant v. McCarthy, 597 F. Supp. 1388, 1413 (N.D. Cal. 1984))).

Because there are alternative means of communication available to plaintiff, he cannot state a claim based on loss of phone privileges imposed due to disciplinary sanctions.

### 2. Standard Minimum Rules for the Treatment of Prisoners

Plaintiff claims that denial of communication with family and friends violates the United Nations Standard Minimum Rules for the Treatment of Prisoners. (ECF No. 7 at 6.) However,

> [t]he Standard Minimum Rules for the Treatment of Prisoners ("Standard Minimum Rules") . . . fail as a source of justiciable rights. This document was adopted by the First United Nations Congress on the Prevention of Crime and the Treatment of Offenders in 1955 "to set out what is generally accepted as being good principle and practice in the treatment of prisoners and the management of institutions." Standard Minimum Rules ¶ 1. It is not a treaty, and it is not binding on the United States. Even if it were a self-executing treaty, the document does not purport to serve as a source of private rights.

Serra v. Lappin, 600 F.3d 1191, 1197 (9th Cir. 2010). Accordingly, plaintiff's claim that deprivation of phone privileges violated his rights under the Standard Minimum Rules for the Treatment of Prisoners is not actionable in a § 1983 action. Knapp v. Cate, No. 1:08-cv-1779 BAM PC, 2011 WL 5416342 at *7 (E.D. Cal. Nov. 8, 2011).

### 3. Restrictions Imposed on SHU Inmates

Any allegation that plaintiff's rights were violated because he was retained in segregated housing is not sufficient, on its own, to show a violation of his rights. An inmate cannot state a claim for violation of his rights under the Eighth Amendment "simply by pointing to the

generalized 'psychological pain,' – i.e., the loneliness, frustration, depression or extreme boredom—that inmates may experience by virtue of their confinement in the [secured housing unit]." Madrid v. Gomez, 889 F. Supp. 1146, 1264 (N.D. Cal. 1995) (citing Toussaint, 801 F.2d at 1107-08). To the extent that plaintiff alleges confinement in SHU housing exposed him to conditions that were harsher than outside of SHU housing, the allegations in the complaint are insufficient to state a cognizable claim.

### B. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

Plaintiff has alleged that he engaged in protected activity, filing grievances, and that thereafter defendants took adverse action against him. Plaintiff has alleged that officers opened a secured door leading to a violent interaction, ensured he received an excessively long term in segregated housing, delayed giving him a tablet. (ECF No. 7 at 7-13.) However, in order to state a claim, he must state facts showing that the adverse action was taken because of plaintiff's protected activity.

Here, the complaint does not contain facts alleging that the defendants who took adverse action against him were aware that he filed grievances.[1] In any amended complaint, plaintiff must clearly identify which wrongs were committed by which defendants. See Fegbohungbe v. Caltrans, No. 13-cv-3801 WHO, 2014 WL 644008, at *3 n.4 (finding "[t]he general allegation regarding 'defendants' is . . . insufficient on its face because it does not identify which specific defendants" were responsible for the alleged harms); Chevalier v. Ray and Joan Kroc Corps.

---

[1] The court notes that he alleges Ainseworth and Alverez "informally retaliated" against him (ECF No. 7 at 9), but he has not provided any facts indicating how these defendants "informally retaliated against him."

8

Cmty. Ctr., No. C 11-4891 SBA, 2012 WL 2088819, at *2 (N.D. Cal. June 8, 2012) (finding complaint failed to "identify which wrongs were committed by which Defendant" insufficient to state a claim). He must also include facts showing that defendants took adverse action against him because he engaged in protected activity. Accordingly, his allegations are insufficient to state a cognizable retaliation claim.

### C. Equal Protection

Plaintiff claims that he was treated differently than other similarly situated individuals. (ECF No. 7 at 16.)

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Hartmann v. Calif. Dept. of Corrs. and Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). State prison inmates retain a right to equal protection of the laws guaranteed by the Fourteenth Amendment. Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Lee v. Washington, 390 U.S. 333, 334 (1968)). An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class, Hartmann, 707 F.3d at 1123, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601-02 (2008).

Plaintiff's allegations are too conclusory to state a claim at this time. He has alleged that he was treated differently from similarly situated inmates. (ECF No. 7 at 16.) However, restating the elements is insufficient to state a cognizable claim. In any amended complaint, plaintiff should state specific allegations showing how his treatment was different than the treatment of similar situated inmates.

### D. Grievance Procedure

Plaintiff's allegations against defendant Kissane are based solely on her response to his grievances. (ECF No. 7 at 9, 13.)

////

The Ninth Circuit has held that inmates have no protected interest in an inmate grievance procedure arising directly from the Due Process Clause. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific grievance procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (there is no protected liberty interest to a specific grievance procedure). Thus, plaintiff cannot state a claim based on prison officials' actions in processing and/or responding to his grievance. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (the administrative "grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment . . . Thus, defendants' failure to process any of [plaintiff's] grievances, without more, is not actionable under section 1983.") (internal quotations omitted). Accordingly, the allegations in the complaint are insufficient to show that defendant Kissane violated his rights.

### E. Supervisory Liability

Plaintiff has alleged HDSP Warden St. Andre failed to properly respond to staff complaints, ensure plaintiff was protected from retaliation, and did not remove staff who were retaliating. (ECF No. 7 at 7.)

A plaintiff must allege facts showing the failure to train resulted from a defendant's "deliberate" or "conscious" choice and that a sufficient causal connection exists between the supervisor's wrongful conduct and the alleged constitutional violation. Canell v. Lightner, 143 F.3d at 1210, 1213 (9th Cir. 1998) (citation omitted).

Additionally, the Supreme Court has rejected the notion that a supervisory defendant can be liable based on "knowledge and acquiescence in their subordinates'" unconstitutional conduct because government officials "may not be held liable for the misdeeds of their agents." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Thus, plaintiff fails to state a retaliation claim against Warden St. Andre based on his allegation that St. Andre allowed certain actions to take place.

### AMENDING THE COMPLAINT

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required

to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all prior pleadings are superseded. Any amended complaint should contain all of the allegations related to his claim in this action. If plaintiff wishes to pursue his claims against the defendant, they must be set forth in the amended complaint.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

## MOTION TO APPOINT COUNSEL

Plaintiff has filed a motion to appoint counsel.  Therein he argues the court should appoint counsel because he cannot afford counsel, the issues in this case are complex, he has limited access to the law library, he did not receive a response to prior requests for counsel, and he has limited knowledge of the law.  (ECF No. 5 at 1.)

The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel.

In the present case, the court does not find the required exceptional circumstances.  Plaintiff has alleged nothing more than circumstances common to most inmates in support of his motion.  Additionally, at the screening stage, the court cannot ascertain plaintiff's likelihood of success on the merits.  Accordingly, the motion will be denied without prejudice to its renewal at a later stage of the proceedings.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff filed a notice of change of address dated April 13, 2023, notifying the court that he had been transferred to California Medical Facility.  (ECF No. 8.)  He also requests an order

from the court directing prison officials to immediately provide his legal property. He states that since his transfer he had been denied access to his legal records. He also requested that the court order prison officials to allow him access to the law library.

A party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Plaintiff's motion does not address the likelihood of success on the merits, whether he will suffer irreparable harm if his motion is not granted, the balance of the equities, or whether an injunction is in the public interest. Accordingly, the motion will be denied without prejudice.

### CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's motion to appoint counsel (ECF No. 5) is denied without prejudice.

4. Plaintiff's motion for preliminary injunction (ECF No. 8) is denied without prejudice.

5. Plaintiff's complaint (ECF No. 1) is dismissed with leave to amend.

6. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must bear the docket number assigned to this case and must be labeled "Second Amended Complaint."

////

7.  Failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: October 10, 2023

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil Rights/cort0454.scrn+31.pi